CLERKS OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED
August 23, 2024
LAURA A. AUSTIN, CLERK
BY: s/ FELICIA CLARK
    DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | Case No. 7:15CR00094 |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **SYLVESTER MONROE JACKSON,** ) | JUDGE JAMES P. JONES |
| ) | |
| Defendant. ) | |

*Rachel Barish Swartz, Assistant United States Attorney, Roanoke, Virginia, for United States; Nancy C. Dickenson-Vicars, Assistant Federal Public Defender, Abingdon, Virginia, for Defendant.*

Defendant Sylvester Monroe Jackson has filed a pro se motion to reduce his sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A) on the ground that he is the sole available caretaker for his terminally ill half-brother, JG. The Federal Public Defender has filed a supplemental motion. The government opposes the motions. For the following reasons, the defendant's motions will be denied.

I.

On October 12, 2017, the late District Judge Glen E. Conrad sentenced the defendant to 160 months' imprisonment after he pleaded guilty to conspiring to possess with intent to distribute and to distribute at least 500 grams of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A). He is now

50 years old and incarcerated at FCI Edgefield, with a projected release date of October 27, 2027.

This is Jackson's fifth request for compassionate release. His first motion in 2020 cited numerous medical conditions (sleep apnea, diabetes, hypertension, and obesity) and the desire to care for his young daughter as grounds for relief. Judge Conrad denied the motion. In subsequent motions, Jackson reiterated his medical conditions amid the COVID-19 pandemic as grounds for release and asserted the lack of an adequate caretaker for JG, as well as Jackson's teenage daughter.

I denied Jackson's most recent motion in 2022 for several reasons. First, he failed to demonstrate that the pandemic presented an extraordinary and compelling reason for release. He also failed to show that his aunt could not care for JG, or that no one else would be available to assist if needed. His daughter's situation at home, while understandably stressful, did not warrant early release. Furthermore, the 18 U.S.C. § 3553(a) factors weighed against early release, given Jackson's lengthy criminal history, relatively low sentence, and the need for deterrence. *United States v. Jackson*, No. 7:15C00094, 2022 WL 16731205, at *2 (W.D. Va. Nov. 7, 2022).

In his present motion, Jackson claims that JG is incapacitated and without a caregiver other than his aunt who suffers from numerous chronic diseases. He supports these claims with documentation from JG, his aunt, and their medical providers. He emphasizes the nonviolent nature of his crime, asserts that he is

reformed and ready to return to society, and highlights his rehabilitation progress, including his recent BOP reclassification to a medium recidivism risk. The government, however, argues that Jackson fails to present extraordinary and compelling reasons for compassionate release, and that the § 3553(a) factors continue to oppose early release. The motion is ripe for decision.

II.

The governing statute permits a sentencing reduction if "extraordinary and compelling reasons warrant such a reduction" and the reduction aligns with the United States Sentencing Commission's policy statements. 18 U.S.C. § 3582(c)(1)(A); *see also* 28 U.S.C. § 994(t) (directing Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction"). Under those policy statements, a defendant's sentence may be reduced due to family circumstances if the defendant's immediate family member "or an individual whose relationship with the defendant is similar in kind to that of an immediate family member" is incapacitated, and the defendant is the "only available caregiver." U.S. Sent'g Guidelines Manual (USSG) § 1B1.13(b)(3)(D) (U.S. Sent'g Comm'n 2023). In making that determination, the court may consider other circumstances or combination of circumstances similar in gravity to those described in the Guidelines Manual. § 1B1.13(b)(5). If the court finds extraordinary and compelling circumstances, it must then consider the applicable § 3553(a) factors

to determine if a sentence reduction is appropriate. *United States v. Kibble*, 992 F.3d 326, 331 (4th Cir. 2021).

III.

The court first examines the threshold requirement for obtaining relief under § 3582(c)(1)(A), which is "satisfied if a defendant requests the Bureau of Prisons (BOP) to bring a motion [for compassionate release] on their behalf and either fully exhausts all administrative rights to appeal the Bureau's decision or waits 30 days from the date of their initial request to file a motion in the district court." *United States v. Muhammad*, 16 F.4th 126, 131 (4th Cir. 2021). On July 12, 2022, Jackson asked the warden of his facility to pursue compassionate release on his behalf and waited over 30 days to file a motion in this court. The government does not contest that Jackson has exhausted his administrative remedies. Accordingly, I find that he has satisfied the statute's exhaustion requirement.

Next, the court considers the merits of Jackson's motion. Jackson "bears the burden of showing that extraordinary and compelling reasons warrant a sentence reduction." *United States v. Melvin*, No. 23-6011, 2023 WL 5974872, at *2 (4th Cir. Sept. 14, 2023). He argues that JG's incapacitation and lack of a caretaker constitute extraordinary and compelling reasons and cites his good conduct and rehabilitation progress as relevant to the § 3553(a) factors.

The Sentencing Commission does not specify whether half-siblings qualify as immediate family members under § 1B1.13(b)(3), nor is there relevant case law in the compassionate release context.  Since Jackson and JG were raised together, I find their relationship to be the "functional equivalent" of immediate family.

There is little case law articulating a standard by which to determine whether a defendant's immediate family member is incapacitated.  Courts have therefore referred to BOP Program Statement 5050.50, which defines incapacitation, in the context of a defendant's spouse or registered partner, as having "suffered a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse or registered partner is completely disabled, meaning that the spouse or registered partner cannot carry on any self-care and is totally confined to a bed or chair."  U.S. Dep't of Justice, *Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g),* Federal Bureau of Prisons Program Statement No. 5050.50 (Jan. 17, 2019), https://www.bop.gov/policy/progstat/5050_050_EN.pdf;  *see, e.g., United States v. Collins*, No. 15-10188-EFM, 17-10061-EFM, 2020 WL 136859, at *4 n.13 (D. Kan. Jan. 13, 2020) (finding that, although the Program Statement governs "how the BOP reviews an inmate's request for reduction in sentence," it "provide[s] guidance for courts as well").  The Department of Labor's (DOL) definition of incapacitation under the Family and Medical Leave Act is also instructive.  29 C.F.R. § 825.113(b) ("The

term incapacity means inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom.").

Considering JG's extensive medical records in light of guidance, Jackson has not shown that JG is incapacitated. JG "has become increasingly disabled" from stage II multiple myeloma, a progressive and, in his case, terminal form of cancer. Ex. A, ECF No. 151. He is prescribed over 20 medications for his many ailments, including anxiety disorder, COPD, pneumonia, hypertension, anorexia, constipation, erectile dysfunction disorder, and pain due to neoplastic disease, two recent fractures, and a tooth abscess. Ex. B at 23, ECF No. 151-1. Despite his diagnoses, the latest medical records from April of 2024 indicate that JG remains "ambulatory and able to carry out work of a light or sedentary nature (e.g., light housework, office work)." *Id.* at 7. Furthermore, he is only "sometimes accompanied to clinic by his aunt," suggesting that he occasionally travels alone. *Id.* at 6. These records show that he can render basic self-care and is not confined to a bed or chair. Although his health is failing, he is not currently incapacitated.

Additionally, it is unclear whether Jackson is JG's only available caregiver. Jackson has sufficiently established that his aunt is unable to adequately care for JG due to her many chronic conditions. As indicated in the letter from her medical provider, she is "unable to be a primary caregiver to anyone, as it is all she can do to

take care of herself right now." Ex. D, ECF No. 151-3. But, in a letter to this court, JG mentions having two daughters. He claims that one of his daughters is on a heart transplant list, and the other suffers from substance abuse disorder. Ex. C, 151-2; Suppl. Mot. at 5, ECF No. 148. While there is no reason to deny his daughters' apparent health issues, courts generally decline to grant compassionate release without a "robust evidentiary showing" that the defendant is the only available caregiver. *United States v. Richardson*, No. 5:18-CR-507-IFL, 2020 WL 2200853, at *2 (E.D.N.C. May 6, 2020).

While I sympathize with Jackson's unfortunate family situation, he has not shown that his JG is confined to a bed or chair, totally unable to care for himself. Nor has Jackson foreclosed the possibility of another suitable caregiver. Therefore, his family circumstances do not constitute extraordinary and compelling reasons to justify compassionate release.

IV.

Even if Jackson presented extraordinary and compelling family circumstances, the relevant § 3553(a) factors still counsel against compassionate release. He has a lengthy criminal history spanning almost thirty years. Before his conviction, Jackson was "a central figure" in distributing at least 500 grams of methamphetamine, a destructive and addictive substance. Presentence Investigation Rep. ¶ 4, ECF No. 74. His 160-month sentence, of which he has served

approximately 70 percent, is substantially lower than the guideline range of 360 months to life.  *See* § 3553(a)(6).  Furthermore, his successful completion of the RDAP program should further reduce his remaining sentence by 12 months.

Jackson's progress and rehabilitation is commendable, and I encourage his continued efforts to lead a reformed and law-abiding life.  However, releasing him now would not provide just punishment, reflect the seriousness of the offense, or afford adequate deterrence from similar offenses.

V.

Accordingly, it is **ORDERED** that the Motion for Compassionate Release, ECF No. 143, and the Supplemental Motion for Compassionate Release, ECF No. 148, are DENIED.

ENTER:   August 23, 2024

/s/  JAMES P. JONES
Senior United States District Judge